(47 South. 543.)

No. 17,284.

## STATE v. MONFRE.

(Nov. 4, 1908.   Rehearing Denied Nov. 30, 1908.)

CRIMINAL LAW (§§ 419, 420*) — EVIDENCE — HEARSAY EVIDENCE.

The state placed the witness Locayano on the stand. He testified that on a particular occasion he heard a person then and there make certain statements; he also heard the accused, who was present, make certain remarks in respect thereto. It was not the purpose of the testimony to establish the truthfulness of the statements, but the fact itself (rem ipsem) that such statements were made and followed by comments upon them. The witness in testifying to the statements was not bringing hearsay evidence before the jury; he was testifying no further than to what he himself heard. And witness who heard the statements and remarks following was as competent as another to prove them. It was not necessary to produce as a witness the person who made the statements, or account for his absence, before having recourse to another.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 973; Dec. Dig. §§ 419, 420.*]

(Syllabus by the Court.)

Appeal from Criminal District Court, Parish of Orleans; Joshua G. Baker, Judge.

Joseph Monfre was convicted of crime, and appeals. Affirmed.

John Quincy Flynn, for appellant. Walter Guion, Atty. Gen., James Porter Parker, Dist. Atty., and Samuel Alexander Montgomery, Asst. Dist. Atty. (Chandler Clement Luzenberg, of counsel), for the State.

NICHOLLS, J. Defendant, Joseph Monfre, was charged, jointly with Alberto Pamelia, with having in the nighttime willfully, maliciously, and feloniously exploded a certain explosive substance with the felonious intent in so doing to destroy a house situated in South Claiborne street in the city and parish of Orleans, in which house there were at the time human beings, viz., Carmello Graffagnini and his wife, usually staying and residing, and who on the said night were actually in the said house, and the said exploding with the said intent is contrary to the form of the statute of the state of Louisiana in such case made and provided, and against the peace and dignity of the same.

On application of the state a severance was granted. Defendant Joseph Monfre was subsequently put on trial and found guilty as charged, and sentenced to imprisonment in the State Penitentiary at hard labor for 20 years.

He has appealed.

Defendant filed a bill of exceptions as follows:

"On the trial of the case John Locayano, a witness for the prosecution, being on the stand and asked the following question, the counsel for defendant objected to said question and the answer thereto, as follows:

"'While at Maggio's house, was there anything said by Monfre as to either Maggio or some one else in his house—was speaking about Monfre going to that house?

"'A. There was a colored woman in the house, and she was telling—' (Defense objects.)

"'By Mr. Luzenberg: It was said in the presence of Monfre?

"'By Mr. Flynn: When was it said?

"'A. Inside the house.

"'Q. Where was Monfre at the time?

"'A. Inside the house.

"'Q. Talk in English.

"'A. Talking in English.

"'By Mr. Flynn: Is the colored woman to be had at all?

"'By Mr. Luzenberg: I don't know anything about it.'

"(Defense objects.)

"'By Mr. Flynn: My objection is that this evidence is inadmissible for the reason the best evidence is the woman herself, to make this statement, if she can be gotten. The state has not subpoenaed her. Any statement as to a fact should be made by her, as this man was then and there under arrest, and had no means of contradicting it, and is not precluded by it, nor is it admissible against him.'

"(Objection overruled.)

"'A. This colored woman was telling one of the detectives—I think Detective Littleton, if I am not mistaken—that Monfre came there and got her husband or got Di Maggio and took him off with him, and she spoke in those lines, and when she did Monfre hollered to Di Maggio: "Di Maggio, the bitch is telling everything."'

"That counsel for defendant objected to the ruling of court, and reserved this as his bill of exceptions to said ruling, and made the question and answers of said witness part of said bill of exceptions.

"(Counsel for defendant objects to said ques-

tion and answer, for the reason that said testimony was inadmissible, and it was attempted to prove what was said by some one by the evidence of another, then said witness was attainable, and the state having failed to summon said witness or to use the means placed at its disposal by the law for procuring said witness was at fault, and the effort to prove such statement by other than the witness herself was illegal and the testimony was inadmissible. For these reasons counsel objected, and, the court overruling said objections, a bill was reserved and the question and answers made part of said bill, and the same is herewith tendered.)

" 'By the Court: Evidence was before the jury from which they could find that the house of Graffagnini was blown up because he could not comply with a demand contained in letters received by him that he should pay $1,000, and there was evidence that, in order to receive the money, this defendant and Di Maggio had together called on Graffagnini.'

"The words uttered by the defendant to Di Maggio were admissible as a fact to prove conduct on the part of the defendant, showing in him consciousness of guilt; and since they were admissible for that purpose, the conversation that caused the defendant Monfre to utter them was also admissible.

"Defendant moved for a new trial, and the court overruled the same."

The witness Locayano was called on to testify as to what was said on a particular occasion, while he was at Di Maggio's house, in which the defendant Monfre was present, as were also Di Maggio, Detective Littleton, and a negro woman. It appears that a negro woman commenced giving to Detective Littleton a detailed account of what had happened on a visit made by Monfre on a previous occasion to Di Maggio's house; while she was doing so Monfre called to Di Maggio: "Di-Maggio, the bitch is telling everything."

Exactly what the woman told Littleton does not appear, but it was evidently something which connected Monfre more or less with the explosion at Graffagnini's house. In giving his testimony, Locayano was testifying to what (being present) he himself had heard and seen; his testimony on those subjects was from first hands and original, and as good testimony as to what occurred at the time as that of any other witness who heard what was then said. The object of taking Locayano's testimony was to bring out the part which Monfre himself then took in relation to the woman's statements, and not to make use of those statements as substantive evidence, and as being true. It was Monfre's connection with those statements which the state was aiming to establish. Had he not been present and taking part in the conversation, the state would never have attempted to make use of the statements themselves. It is difficult to see how the negro woman was any better witness (if so good) as to what she told Littleton, or as to what Monfre called out to Di Maggio, than Locayano was. Had the state proposed to establish as facts the circumstances stated by the woman as having occurred at Di Maggio's house on the previous occasion, the woman herself would, as a matter of course, have had to be called as a witness, inasmuch as to them Locayano knew nothing; but the woman's statements were only incidentally used to explain the bearing of Monfre's remarks to Di Maggio in respect to them. For the purpose for which the testimony was introduced, the question propounded to Locayano and his answer thereto were admissible. See State v. Price, 121 La. 53, 46 South. 99; Greenleaf on Ev. (16th Ed.) vol. 1, par. 82; Best on Evidence (Chamberlayne's Ed.) p. 80; Elliot on Ev. par. 2723; Wigmore on Ev. vol. 1.

Judgment affirmed.